FILED
United States Court of Appeals
Tenth Circuit

November 6, 2019

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

ISIDRO MENDIOLA,

    Plaintiff - Appellant,

v.

EXIDE TECHNOLOGIES; RANDALL
BATES,

    Defendants - Appellees.

No. 18-3248
(D.C. No. 6:17-CV-01097-JWB)
(D. Kan.)

_____

ORDER AND JUDGMENT[*]
_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Isidro Mendiola sued his former employer, Exide Technologies, and supervisor,

Randall Bates, asserting various claims arising from termination of his employment. The

district court granted summary judgment in favor of Defendants. Mr. Mendiola appeals,

challenging the district court's entry of judgment on his claim that Defendants retaliated

against him for taking leave under the Family Medical Leave Act, 29 U.S.C. §§ 2601-54

("FMLA"). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

The following facts are not disputed unless otherwise stated:

Exide operates a battery manufacturing plant in Salina, Kansas. Mr. Mendiola worked at the plant for 37 years before Exide terminated his employment in June 2016. Throughout his employment, Mr. Mendiola worked as an operator in the plant's Formation Department, where he served in various positions on the plant's manufacturing lines. Mr. Bates was a lead and later the supervisor of the Formation Department from 2014 through Mr. Mendiola's termination. Exide's production standards increased during Mr. Mendiola's employment.

In December 2015, Mr. Mendiola was unexpectedly hospitalized for an infection that required foot surgery. He requested FMLA leave for his hospital stay and recovery, and Exide granted his request. Mr. Mendiola returned to work on March 13, 2016.

Both before and after his leave, Mr. Bates received complaints from Mr. Mendiola's co-workers that Mr. Mendiola was falling behind on the manufacturing line and hampering production. Mr. Bates monitored Mr. Mendiola's performance after first receiving these complaints, and concluded Mr. Mendiola was having difficulty keeping up with the pace of the manufacturing lines and maintaining the quality of the product. Mr. Bates coached Mr. Mendiola multiple times before his FMLA leave about the need to improve. He also moved Mr. Mendiola to different positions on the manufacturing lines, trying to find one he could perform adequately.

2

In Mr. Mendiola's August 2015 annual review, four months before his FMLA leave, Shawn Hogan, the Formation Department Manager and Mr. Mendiola's former supervisor, advised Mr. Mendiola that he was only partially meeting performance expectations in the quality and quantity of his work. In the written comments to this evaluation, he informed Mr. Mendiola that he needed to improve the quality of his work and learn new positions and how to take advice from co-workers. Before the 2015 evaluation, Mr. Mendiola's annual reviews had generally indicated that his performance met expectations, while also identifying areas for improvement.[1]

After Mr. Mendiola returned from leave in mid-March 2016, Mr. Bates and Mr. Hogan both observed that he was having trouble keeping up with the pace of production and meeting production and quality standards. Mr. Bates coached Mr. Mendiola on the need to improve, arranged for additional training for him, and again tried him at different positions on the plant's three manufacturing lines. Mr. Hogan also met with Mr. Mendiola and suggested that he apply for a less-demanding position in Exide's adjacent Distribution Center. Mr. Mendiola refused because he was happy in the Formation Department. Mr. Hogan testified that he told Mr. Mendiola at this meeting that he should move to the Distribution Center

---

[1] In his 2013 and 2014 annual reviews, for example, areas for improvement included Mr. Mendiola getting faster in change-overs, working on keeping the manufacturing line full and maintaining the quality of the product, and doing a better job of listening to and following instructions. Mr. Mendiola was also rated as only partially meeting performance expectations in the quantity of his work in 2013.

because he could no longer keep up in the Formation Department, but Mr. Mendiola denies this aspect of their conversation.

On April 18, 2016, Mr. Bates met with Mr. Mendiola again to discuss his performance issues. In a follow-up email to Mr. Hogan and Exide's HR department, Mr. Bates reported that he notified Mr. Mendiola at the meeting that he had not met production or quality standards at any of his recent positions in the Formation Department and that disciplinary action would be taken if he did not meet these standards at his next position. Five weeks later, on May 24, Mr. Bates and Mr. Hogan met with Mr. Mendiola and delivered a written notice informing him that he had not met production and quality standards at his most recent position, that he had not succeeded in performing any role in the Formation Department, and that his poor performance had created downtime and costs for the company. The notice further informed Mr. Mendiola that this job performance could no longer be tolerated and that "immediate improvement [was] required to avoid termination." Aplt. App. Vol. I at 119. Shortly thereafter, it is undisputed that Mr. Mendiola was responsible for production problems and downtime on the manufacturing line to which he had been assigned. On June 7, Exide terminated Mr. Mendiola's employment, effective June 15, 2016, citing his inability to meet performance standards.[2]

---

[2] We also note that at some point after his termination, Mr. Mendiola applied for Social Security disability benefits, asserting he was physically unable to work as of June 7, 2016, his last day of work with Exide. The Social Security Administration found Mr. Mendiola was disabled as of this date and awarded him benefits.

4

Mr. Mendiola filed this action against Exide and Mr. Bates, alleging claims under the FMLA and Age Discrimination in Employment Act. He brought this appeal after the district court granted Defendants' motion for summary judgment on all claims.

## DISCUSSION

In his appellate brief, Mr. Mendiola challenges only the district court's grant of summary judgment against his FMLA retaliation claim. As a result, we limit our review to this issue. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (appellant generally forfeits appellate review of issues omitted from opening brief).

### A. Standard of Review

"[W]e review summary judgment decisions de novo, applying the same legal standard as the district court." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019) (internal quotation marks and alterations omitted). Under this standard, summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law. *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (internal quotation marks and alterations omitted). "[W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Talley*, 923 F.3d at 893 (internal quotation marks omitted).

**B. FMLA Retaliation Claim**

"Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas*." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973)). "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation, by proving that (1) [he] engaged in a protected activity; (2) the defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017) (internal quotation marks and alterations omitted). If the plaintiff successfully asserts a prima facie retaliation case, then the burden shifts to the defendant to "offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Metzler*, 464 F.3d at 1170 (citation omitted).

Mr. Mendiola claimed Defendants violated the FMLA by terminating his employment in retaliation for him taking FMLA leave. The district court granted summary judgement against this claim, concluding Mr. Mendiola had established a prima facie case of retaliation, but had not met his burden of demonstrating that Defendants' asserted non-retaliatory reason for discharging him—poor job performance—was pretextual.

6

For purposes of appeal, we assume Mr. Mendiola established a prima facie case of retaliation.[3]  We also conclude Defendants met their burden of showing a legitimate, non-retaliatory reason for discharging Mr. Mendiola, namely his failure to meet job performance standards.  As a result, to avoid summary judgment Mr. Mendiola must raise a genuine issue of fact as to pretext by presenting evidence that would allow a reasonable jury to conclude that Defendants did not in fact discharge him because of poor job performance.  He may make this showing by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-[retaliatory] reasons."  *Dewitt*, 845 F.3d at 1307 (internal quotation marks omitted).

Mr. Mendiola has not met this burden.  He claims the evidence shows that his job performance was consistent and satisfactory throughout his long career at the plant, including before and after his FMLA leave.  But the record shows that Defendants became dissatisfied with his job performance no later than August 2015, when Mr. Mendiola received a subpar annual evaluation months before his unexpected surgery and FMLA leave.  This evidence does not necessarily negate the possibility that

---

[3]  Defendants argued below and again on appeal that Mr. Mendiola did not establish a prima facie retaliation case because he failed to demonstrate a causal connection between his FMLA leave and his discharge.  We do not address this question because we affirm the district court's summary judgment decision on other grounds.

Defendants' subsequent reliance on his poor job performance was a pretext for FMLA retaliation, *see Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218-19 (10th Cir. 2002), but it does not create a genuine issue as to pretext when, as in this case, there is simply no evidence suggesting that Defendants' "criticism of [Mr. Mendiola] was inflated and exaggerated as a means of retaliating against [him]," *Metzler*, 464 F.3d at 1175 (internal quotation marks and alterations omitted). *See also Dewitt*, 845 F.3d at 1307 ("Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." (internal quotation marks and alterations omitted)).

In addition, even viewed in the light most favorable to Mr. Mendiola, the evidence if anything tends to show that Defendants were looking for ways to maintain Mr. Mendiola's employment with the company rather than end it. Mr. Mendiola does not dispute, for example, that Mr. Bates coached him on his performance problems before and after his leave, that Mr. Bates and/or Mr. Hogan met with him multiple times after he returned from leave to discuss his performance problems, that Mr. Bates offered him additional training and moved him to different positions within the Formation Department, and that Mr. Hogan suggested that Mr. Mendiola apply for a less-demanding position in the company's Distribution Center. A reasonable jury could not infer pretext from this evidence. Nor are we persuaded that a reasonable jury could find Defendants' explanation for discharging Mr. Mendiola was pretextual because the company opted to respond to its long-time employee's performance issues in this manner instead of issuing formal written warnings to him pursuant to the non-binding progressive discipline policy

8

in its employee handbook. *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 889 (10th Cir. 2018) ("[T]he mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that . . . the substantive reasons given by the employer for its employment decision were pretextual." (internal quotation marks omitted)).

To the extent Mr. Mendiola seeks to demonstrate pretext by disputing Defendants' assessment of his job performance, we note that the issue is not whether Defendants were correct in their assessment, but rather whether they honestly believed he could no longer meet performance standards in the Formation Department and acted in good faith on this belief. *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017). Mr. Mendiola has not come forward with evidence from which a reasonable jury could find that Defendants lacked such a belief.[4] Accordingly, considering the totality of the evidence, we conclude there is no genuine dispute as to the authenticity of Defendants' legitimate, non-retaliatory reason for terminating Mr. Mendiola's employment. Defendants were entitled to summary judgment.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[4] The record does not support Mr. Mendiola's suggestions that Mr. Bates and Mr. Hogan were inconsistent in testifying about his job performance.